Slip Op. 21-39

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> and <br><br> IMSS, LLC, <br><br> Consolidated Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Mark A. Barnett, Chief Judge <br> Consol. Court No. 18-00222 |

## <u>OPINION</u>

[Granting Defendant's motion for summary judgment as to all subject entries and denying Plaintiff's and Consolidated Plaintiff's cross-motion for summary judgment. Denying as moot Defendant's motion for a protective order and Consolidated Plaintiff's motion to compel.]

Dated: April 9, 2021

<u>Robert W. Snyder</u> and <u>Laura A. Moya</u>, Law Offices of Robert W. Snyder, of Irvine, CA, argued for Plaintiff and Consolidated Plaintiff.

<u>Marcella Powell</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for Defendant.  With her on the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, <u>Justin R. Miller</u>, Attorney-in-Charge, International Trade Field Office, <u>Aimee Lee</u>, Assistant Director, and <u>Hardeep K. Josan</u>, Trial Attorney.  Of counsel on the brief was <u>Paula Smith</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Barnett, Chief Judge:  In this consolidated action, Plaintiff Aspects Furniture

International, Inc. ("AFI") and Consolidated Plaintiff IMSS, LLC ("IMSS") (together,

"Consolidated Plaintiffs") contest the denial of their respective protests challenging U.S.

Customs and Border Protection's ("CBP" or "Customs") allegedly untimely assessment

of antidumping duties on the entries associated with those protests.  The matter is

before the court on Defendant's ("the Government") motion for summary judgment

pursuant to U.S. Court of International Trade ("USCIT" or "CIT") Rule 56 and

Consolidated Plaintiffs' cross-motion for summary judgment.  *See* Def.'s Mot. for Summ.

J., and accompanying Mem. in Supp. of its Mot. for Summ. J. in the Consol. Action

("Gov't's Mot. Summ. J."), ECF No. 73; [Consol. Pls.'] Cross-Mot. for Summ. J. and

Opp'n to [the Gov'·s] Mot. for Summ. J., and accompanying Mem. in Supp. of Their

Cross-Mot. for Summ. J. and in Opp'n to [the Gov't's] Mot. for Summ. J. ("Consol. Pls.'

Cross-Mot. & Opp'n"), ECF No. 79.

    For the reasons discussed herein, the court will grant the Government's motion

for summary judgment as to all subject entries and deny Consolidated Plaintiffs' cross-

motion for summary judgment.

BACKGROUND

## I.  Facts Not in Dispute

    The party seeking summary judgment must show that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  USCIT Rule 56(a).  Movants should present material facts as short and concise

statements, in numbered paragraphs, USCIT Rule 56.3(a), and cite to "particular parts

of materials in the record" as support, USCIT Rule 56(c)(1)(A).  In responsive papers,

the opponent "must include correspondingly numbered paragraphs responding to the numbered paragraphs in the statement of the movant."  USCIT Rule 56.3(b).

In this case, Parties submitted a joint statement of undisputed material facts and a joint statement of undisputed facts except as to their materiality.  *See* Jt. Stmt. of Undisputed Mat. Facts ("JSMF"), ECF No. 74 at ECF pp. 1–5; Jt. Stmt. of Undisputed Facts, Except as to Their Materiality ("JSF"), ECF No. 74 at ECF pp. 5–6.  Consolidated Plaintiffs submitted additional facts they assert are material and not subject to genuine dispute, to which the Government has responded.  *See* [Consol. Pls.] Rule 56.3 Stmt. of Add'l Mat. Facts as to Which There are no Genuine Issues to be Tried ("Consol. Pls.' SMF"), ECF No. 79; Def.'s Resp. to Pls.' Rule 56.3 Stmt. of Add'l Mat. Facts ("Gov't's Resp. to Consol. Pls.' SMF"), ECF No. 80.

Upon review of Parties' statements of facts (and supporting exhibits), the court finds there is no dispute regarding the following facts that are material to resolving the substantive issues in this case or relevant to the arguments presented.[1]

---

[1] Citations are provided to the relevant paragraph number of the joint statements of undisputed facts; Parties' citations to supporting documents generally have been omitted.  Citations to the record are provided when a fact, though not admitted by both parties, is uncontroverted by record evidence.  *See* USCIT Rule 56(c)(3)("The court need consider only the cited materials, but it may consider other materials in the record.").

### A.  The Underlying Administrative Review

The imported merchandise at issue in this case consists of wooden bedroom furniture from the People's Republic of China.  JSMF ¶ 1.[2]  On April 11, 2016, the U.S. Department of Commerce ("Commerce") published the final results of its tenth administrative review of the antidumping duty order on wooden bedroom furniture from China.  *Id.* ¶ 3; *see also Wooden Bedroom Furniture From the People's Republic of China*, 81 Fed. Reg. 21,319 (Dep't Commerce Apr. 11, 2016) (final results and final determination of no shipments, in part; 2014 admin. review) ("*Final Results*")).

On April 26, 2016, the American Furniture Manufacturers Committee for Legal Trade and Vaughan-Bassett Furniture Company, Inc. commenced an action challenging the *Final Results*.  JSMF ¶ 4 (citing *Am. Furniture Mfrs. Comm. for Legal Trade, et al. v. United States*, Court No. 16-cv-00070 (CIT) ("the *AFMC* litigation")).  On April 27, 2016, the court issued a statutory injunction to enjoin the liquidation of certain entries in the *AFMC* litigation.  *Id.* ¶ 5.  On March 13, 2017, the court dismissed that lawsuit for lack of subject matter jurisdiction.  *Id.* ¶ 6 (citing, *inter alia*, Op. & J., *Am. Furniture Mfrs. Comm. for Legal Trade, et al. v. United States*, Court No. 16-cv-00070 (CIT Mar. 13, 2017), ECF Nos. 37–38 ("*AFMC* Op. & J.")).  Neither the court's judgment in the *AFMC*

---

[2] Consolidated Plaintiffs are the importers of record for their respective entries.  AFI made ten entries of wooden bedroom furniture on various dates in January, February, July, and December of 2014.  *See* Summons (schedule of protests), ECF No. 1.  IMSS made one entry on September 11, 2014.  *See* Summons, *IMSS, LLC v. United States*, Court No. 19-cv-00029 (CIT Mar. 11, 2019), ECF No. 1.

litigation nor the court's opinion referenced any removal of the suspension of liquidation related to the statutory injunction.  *See generally AFMC* Op. & J.[3]

On March 29, 2017, CBP published the court's opinion in the *AFMC* litigation in its Customs Bulletin and Decisions Official Reporter.  JSMF ¶ 7.  "On May 12, 2017, the March 13[, 2017] judgment issued in the *AFMC* [litigation] became final and conclusive." *Id*. ¶ 8.

**B.  Commerce's Liquidation Instructions**

Liquidation instructions concerning antidumping and countervailing duties "are created and issued in CBP's Automated Commercial Environment (ACE)."  *Id.* ¶ 9. Certain Commerce employees "have direct login access to ACE."  *Id.* ¶ 10.  To issue liquidation instructions, a Commerce employee logs into ACE, creates a message and the content contained therein, and uploads that message into ACE.  *Id.* ¶¶ 11–12.  "ACE automatically assigns the message an internal message number . . . ."  *Id.* ¶ 13. Customs personnel monitor ACE for new messages.  *Id.* ¶ 14.  When a new message appears, it is "assigned to a CBP employee."  *Id.* ¶ 14.  That employee "reviews the message and 'activates' it in ACE."  *Id.* ¶ 15.  "Upon activation, ACE assigns the message a 'Message Number.'"  *Id.* ¶ 15.  "CBP does not change the content of the

---

[3] While Parties cited to the court's opinion and judgment in the *AFMC* litigation, they did not append copies of those documents to their statements of fact.  In any event, judicial notice of documents filed in the *AFMC* litigation for the purpose of recognizing the adjudicative act is permissible here.  *See, e.g.*, *Los Angeles Biomedical Research Inst. at Harbor–UCLA Med. Ctr. v. Eli Lilly and Co.*, 849 F.3d 1049, 1062 n.6 (Fed. Cir. 2017) (observing that the court "can properly take judicial notice of the records of related court proceedings"); *United States v. New-Form Mfg. Co.*, 27 CIT 905, 917 n.14, 277 F. Supp. 2d 1313, 1325 n.14 (2003).

message in any manner." *Id.* ¶ 16.  Upon activation, "CBP personnel can view and

implement the message." *Id.* ¶ 17.  Additionally, "[m]embers of the importing community

can . . . view any unrestricted messages in ACE." *Id.* ¶ 17.

On May 2, 2016, CBP activated a message created by a Commerce employee in

ACE, and ACE designated the message as Message No. 6123302.  JSF ¶ 1.  Message

No. 6123302 pertained to the statutory injunction entered in the *AFMC* litigation on April

27, 2016 and noted that the injunction was effective as of April 27, 2016.  *Id.* ¶¶ 2, 5.

On May 30, 2017, a Commerce employee created and uploaded another internal

message in ACE relevant to the *AFMC* litigation.  JSMF ¶ 18.  "CBP activated [that]

message in ACE on May 30, 2017 without change, and ACE assigned it Message No.

7150306." *Id.*  Message No. 7150306 stated that the injunction entered in the *AFMC*

litigation and to which Message No. 6123302 referred "dissolved on May 12, 2017." *Id.*

¶ 19.  Message No. 7150306 is dated May 30, 2017 and contained an effective date of

May 12, 2017.  *Id.* ¶¶ 20–21.  Message No. 7150306 is publicly accessible.  *See* Gov't's

Mot. Summ. J., Ex. A., Decl. by Brad Dauble ("Dauble Decl."), Ex. B (Message No.

7150306, designated as public), ECF No. 73-2.

### C.  Liquidation of the Subject Entries

#### 1.  AFI's Entries

There are ten entries at issue with respect to AFI.  On November 24, 2017, CBP liquidated nine of those entries (hereinafter, "AFI's nine subject entries").[4]  JSMF ¶ 26. The tenth entry, Entry No. W69-3327386-5 (hereinafter, "AFI's tenth subject entry"), liquidated by operation of law (alternately referred to as a "deemed liquidation"). Consol. Pls.' SMF ¶ 1; Gov't's Resp. to Consol. Pls.' SMF ¶ 1.  Customs did not provide notice of the deemed liquidation.  Consol. Pls.' SMF ¶ 3; Gov't's Resp. to Consol. Pls.' SMF ¶ 3.  Documents CBP filed with the court state that AFI's tenth subject entry was "Liquidated" on December 1, 2017.  JSMF ¶ 27.

A "final antidumping duty rate of 216.01 percent was assessed on [all ten AFI entries] . . . pursuant to Message No. 7150306."  *Id.* ¶ 28.  The court previously held that AFI timely protested all ten liquidations before CBP "and CBP denied the protests." *Id.* ¶ 29 (citing *Aspects Furn. Int'l, Inc. v. United States* ("*Aspects I*"), 43 CIT ___, 392 F. Supp. 3d 1317 (2019)).

#### 2.  IMSS's Entry

At issue with respect to IMSS is Entry No. 201-3112876-0 (hereinafter, "IMSS's subject entry").  *Id.* ¶¶ 22–25.  IMSS's subject entry liquidated by operation of law.  *Id.* ¶ 22.  Customs did not provide notice of the deemed liquidation.  Consol. Pls.' SMF ¶ 5;

---

[4] AFI's nine subject entries consist of Entry Nos. W69-3325900-5, W69-3325953-4, W69-3326026-8, W69-3329300-4, W69-3329302-0, W69-3329955-5, W69-3343109-1, W69-3345392-1, and W69-3368746-0.  JSMF ¶ 26.

Consol. Court No. 18-00222                                                      Page 8

Gov't's Resp. to Consol. Pls.' SMF ¶ 5.  Customs reliquidated the entry "on February 28,

2018 at the final antidumping duty rate of 216.01 percent."  JSMF ¶ 23.  That rate was

assessed on the entry "pursuant to Message No. 7150306."  *Id.* ¶ 24.  IMSS "timely

protested the reliquidation and the protest was denied by operation of law."  *Id.* ¶ 25.

## II.  Procedural History of the Consolidated Cases

### A.  Lead Action, Court No. 18-00222

AFI timely commenced Court No. 18-00222 on October 27, 2018.  *See*

Summons.  On June 21, 2019, the court denied the Government's partial motion to

dismiss for lack of subject matter jurisdiction.  *Aspects I*, 392 F. Supp. 3d 1317.  On

August 17, 2020, the court granted AFI's motion for leave to file a first amended

complaint.  *Aspects Furn. Int'l, Inc. v. United States*, 44 CIT ___, 469 F. Supp. 3d 1359

(2020).  In that decision, the court denied as moot Defendant's motion for judgment on

the pleadings and AFI's cross-motion for partial judgment on the pleadings.  *See id.*

### B.  Member Action, Court No. 19-00029[5]

IMSS timely commenced Court No. 19-00029 on March 22, 2019.  Summons.

On April 10, 2020, the court denied the Government's motion for judgment on the

pleadings.  Order (Apr. 10, 2020), ECF No. 34; Mem. (Apr. 13, 2020), ECF No. 36

(explaining the court's rationale for its ruling).  The court further lifted the stay on

discovery, Order (Apr. 10, 2020), ECF No. 35, and entered a scheduling order,

Scheduling Order (Apr. 17, 2020), ECF No. 38.  On August 6, 2020, the Government

---

[5] Citations in this subsection are to court filings in *IMSS, LLC v. United States*, Court No. 19-cv-00029 (CIT).

moved for a protective order limiting the scope of discovery.  Def.'s Mot. for a Protective

Order, ECF No. 39.

### C.  Consolidation and Summary Judgment Briefing

On August 25, 2020, the court consolidated the cases under lead Court No. 18-

00222 for purposes of discovery and briefing.  Order (Aug. 25, 2020), ECF No. 67.  The

court further stayed IMSS's response to the Government's motion for a protective order

until September 30, 2020; ordered Parties to confer on the formation of a joint statement

of material facts; and set November 12, 2020 as the deadline for dispositive motions.

*Id.*; *see also* Order (Oct. 8, 2020), ECF No. 71 (extending the stay on IMSS's response

to the Government's motion for a protective order until November 12, 2020).

On November 12, 2020, the Government filed its motion for summary judgment

and the Parties' joint statements of facts.  Gov't Mot. Summ. J; JSMF; JSF.  That day,

IMSS responded to the Government's motion for a protective order and moved to

compel discovery.  *See* [IMSS's] Resp. in Opp'n to Def. United States' Mot. for a

Protective Order and Mot. to Compel, ECF No. 75.[6]  Thereafter, the court informed the

Parties that it would defer ruling on the motion for a protective order during briefing on

dispositive motions and stayed the Government's response to IMSS's motion to compel.

Ltr. from the Court (Nov. 30, 2020), ECF No. 77; Order (Dec. 2, 2020), ECF No. 78.

---

[6] AFI also responded to the motion, though its reason for so doing is unclear.  *See*
[AFI's] Resp. in Opp'n to Def. United States' Mot. for a Protective Order Filed in Consol.
Case No.: 19-00029, ECF No. 76.

On December 17, 2020, Consolidated Plaintiffs cross-moved for summary judgment and opposed the Government's motion.  *See* Consol. Pls.' Cross-Mot. & Opp'n.  On January 21, 2021, the Government filed a combined opposition to Consolidated Plaintiffs' cross-motion and reply to Consolidated Plaintiffs' opposition. Def.'s Mem. in Opp'n to Pls.' Cross-Mot. For Summ. J. and Reply in Further Supp. of Def.'s Mot. For Summ. J. ("Gov't's Opp'n & Reply"), ECF No. 80.  On February 11, 2021, Consolidated Plaintiffs filed a reply.  [Consol. Pls.'] Reply in Further Supp. of their Cross-Mot. for Summ. J. ("Consol. Pls.' Reply"), ECF No. 81.

On March 5, 2021, the court ordered additional briefing with respect to AFI's tenth subject entry.  Letter Order (Mar. 5, 2021) ("Ltr. Order"), ECF No. 82.  On March 19, 2021, AFI filed its response.  Pl. [AFI's] Add'l Br. Regarding the Applicability of the Principle of Harmless Error to the Liquidation of One of its Subject Entries ("AFI's Suppl. Br."), ECF No. 83.  On March 22, 2021, the Government filed its response.  Def.'s Resp. to the Court's Mar. 5, 2021 Order Requesting Suppl. Briefing ("Gov't's Suppl. Br."), ECF No. 84.  On March 29, 2021, the court heard oral argument in connection with the supplemental briefing.  Docket Entry, ECF No. 86; Oral Arg., https://www.cit.uscourts. gov/sites/cit/files/032921-18-00222-MAB.mp3 (last accessed Apr. 9, 2021).

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2012).[7]  The court reviews denial of protest claims arising under 19 U.S.C. § 1515 *de novo*, and "make[s]

---

[7] References to the United States Code are to the 2012 edition unless otherwise stated.

its determinations upon the basis of the record made before [it]."  28 U.S.C.

§ 2640(a)(1).  The court may grant summary judgment when "there is no genuine issue

as to any material fact" and "the moving party is entitled to judgment as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); USCIT Rule 56(a).[8]

DISCUSSION

## I.  Legal Framework

When a statutory or court-ordered suspension of liquidation is lifted, Customs

shall liquidate the relevant entry "within 6 months after receiving notice of the removal

from [Commerce], [an]other agency, or a court with jurisdiction over the entry";

otherwise the entry will be deemed liquidated "at the rate of duty, value, quantity, and

amount of duty asserted by the importer of record."  19 U.S.C. § 1504(d).  Thus, for an

entry to be deemed liquidated, "(1) the suspension of liquidation that was in place must

have been removed; (2) Customs must have received notice of the removal of the

suspension; and (3) Customs must not liquidate the entry at issue within six months of

receiving such notice."  *Cemex, S.A. v. United States*, 384 F.3d 1314, 1321 (Fed. Cir.

2004) (quoting *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1376 (Fed. Cir.

2002)).  The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has

interpreted the statute to require notice that is unambiguous and public.  *See id.*

---

[8] When, as here, Parties have filed cross-motions for summary judgment, the court generally must evaluate each party's motion on its own merits, drawing all reasonable inferences against the party whose motion is under consideration.  *See, e.g.*, *JVC Co. of Am., Div. of US JVC Corp. v. United States*, 234 F.3d 1348, 1351 (Fed. Cir. 2000). Here, however, the material facts are undisputed.

An entry that liquidated by operation of law may, however, be voluntarily reliquidated by CBP pursuant to 19 U.S.C. § 1501 within the time provided therein.  The version of section 1501 that was in effect at the time of importation provided that

> [a] liquidation made in accordance with section 1500 [i.e., a manual liquidation] or 1504 [i.e., a deemed liquidation] . . . may be reliquidated in any respect by [Customs], notwithstanding the filing of a protest, within ninety days from the date on which notice of the original liquidation is given or transmitted to the importer, his consignee or agent.  Notice of such reliquidation shall be given or transmitted in the manner prescribed with respect to original liquidations under section 1500(e) of this title.

19 U.S.C. § 1501.  On February 24, 2016, Congress amended section 1501, *inter alia*, to provide for reliquidation "within ninety days from the date of the original liquidation." Trade Facilitation and Enforcement Act of 2015, Pub. L. No. 114–125, § 911, 130 Stat. 122, 240 (2016).  Thus, under the current version of the statute, the 90-day clock begins to run on the date of the manual liquidation or the date on which an entry deemed liquidated, not the date on which notice of such liquidation was provided.  *Compare* 19 U.S.C. § 1501 (2012), *with* 19 U.S.C. § 1501 (2018).

## II.  The Parties' Cross-Motions for Summary Judgment

The Government seeks summary judgment as to all entries at issue in the consolidated actions.  *See* Gov't's Mot. Summ. J. at 10–18.  Consolidated Plaintiffs counter that summary judgment is premature with respect to AFI's nine subject entries and IMSS's subject entry pending further discovery.  Consol. Pls.' Cross-Mot. & Opp'n at 15–22.  In the alternative, Consolidated Plaintiffs seek summary judgment with respect to AFI's nine subject entries and IMSS's subject entry.  *Id.* at 22–28. Consolidated Plaintiffs cross-move for summary judgment with respect to AFI's tenth

subject entry.  *Id.* at 8–15.  The court first addresses the motions concerning AFI's nine subject entries and IMSS's subject entry before turning to the cross-motions concerning AFI's tenth subject entry.

## A.  AFI's Nine Subject Entries and IMSS's Subject Entry

### 1.  The Government's Motion for Summary Judgment and Consolidated Plaintiffs' Request for Discovery Pursuant to USCIT Rule 56(d)

#### a.  Parties' Contentions

The Government contends that Commerce's issuance of liquidation instructions to CBP on May 30, 2017, ultimately designated by ACE as Message No. 7150306, constituted the requisite notice of the lifting of suspension of liquidation and triggered the start of the six-month liquidation period.  Gov't Mot. Summ. J. at 11.  Thus, the Government contends, CBP timely liquidated AFI's nine subject entries on November 24, 2017, and those entries did not liquidate by operation of law.  *Id.* at 12.  The Government further contends that CBP timely reliquidated IMSS's subject entry on February 28, 2018.  *Id.* at 18.

Consolidated Plaintiffs contend that summary judgment for the Government is premature pending discovery as to whether or when Customs was served with the court's judgment in the *AFMC* litigation.  Consol. Pls.' Cross-Mot. & Opp'n at 16–21; *see also* Decl. of Robert W. Snyder in Supp. of [Consol. Pls.']  Rule 56(d) Request ("Snyder Decl.") ¶¶ 5–8, ECF No. 79-1; Consol. Pls.' Reply at 15–16.  Consolidated Plaintiffs also contend that discovery is necessary to further understand a prior communication system, referred to as OTO3, utilized by CBP and Commerce.  Consol. Pls.' Cross-Mot.

& Opp'n at 21–22; *see also* Snyder Decl. ¶¶ 9–11; Consol. Pls.' Reply at 16.  This

discovery is necessary, Consolidated Plaintiffs contend, because judicial precedent

cited by the Government to support the argument that the six-month liquidation period

began on May 30, 2017 predates Customs' use of ACE.  Consol. Pls.' Cross-Mot. &

Opp'n at 22.  Consolidated Plaintiffs ascribe importance to whether, prior to ACE,

Commerce lacked "[the] same direct login access" that it has with ACE.  *Id.*

The Government counters that Consolidated Plaintiffs' requests for discovery

"should be rejected" as "irrelevant and immaterial" to the pending claims.  Gov't's Opp'n

& Reply at 15.  The Government contends that any service of the court's judgment in

the *AFMC* litigation by the court on CBP cannot fulfill the statutory requirements for

notice; thus, discovery as to whether this occurred would be futile.  *Id.* at 15–16.  The

Government further contends that Consolidated Plaintiffs failed to explain the materiality

of facts concerning differences between the OTO3 and ACE communication systems.

*Id.* at 16.[9]

---

[9] The Government argues that Consolidated Plaintiffs failed to timely "move[] for a
continuance based on USCIT Rule 56(d)."  Gov't's Opp'n & Reply at 14.  Rule 56(d)
contains no such requirement.  Rather, the rule requires the nonmovant to "show[] by
affidavit or declaration that, for specified reasons, it cannot present facts essential to
justify its opposition."  USCIT Rule 56(d).  When the court finds the submission
meritorious, the court may, *inter alia*, defer its consideration of the summary judgment
motion or order further discovery.  USCIT Rule 56(d)(1)–(2).  As discussed, however,
Consolidated Plaintiffs have not shown that discovery is necessary to establish facts
that are essential to justify their opposition.

> **b. There is No Genuine Dispute that Customs Received Notice of the Lifting of Suspension of Liquidation on May 30, 2017; Consolidated Plaintiffs' Request for Further Discovery Lacks Merit**

Here, the undisputed facts establish that Customs received notice of the lifting of suspension of liquidation of subject entries covered by the statutory injunction entered in the *AFMC* litigation on May 30, 2017.  On May 30, 2017, Commerce informed CBP, through an internal message in ACE, that the statutory injunction had dissolved on May 12, 2017.  JSMF ¶¶ 18–19.  Customs activated the message "on May 30, 2017[,] without change," *id.* ¶ 18, thereby rendering Message No. 7150306 publicly available, Dauble Decl., Ex. B; JSMF ¶ 17 (noting that "the importing community can view any unrestricted messages in ACE").  Consolidated Plaintiffs do not dispute these facts. Instead, Consolidated Plaintiffs continue to press for further discovery on alternative theories of notice.

Consolidated Plaintiffs' request for discovery concerning possible service of the CIT's March 13, 2017 judgment in the *AFMC* litigation on CBP by the court is, however, unpersuasive.  Notice of the removal of suspension must be unambiguous.  *Cemex*, 384 F.3d at 1321.  To the extent CBP received a copy of the judgment prior to May 12, 2017, such service would not constitute adequate notice.  "Suspension of liquidation" pursuant to 19 U.S.C. § 1516a(c)(2) "cannot be removed until the time for [filing an appeal] expires."  *Id.* at 1320.  Thus, "[t]he end of the suspension period . . . is a prerequisite for valid notice."  *Id.* at 1320–21.  To the extent CBP received a copy of the judgment following the lifting of suspension on May 12, 2017, but before May 24, 2017, the judgment alone would not constitute adequate notice because it provides no

indication of its finality or the corresponding removal of suspension.  *See id.* at 1321

(explaining that one predicate for a deemed liquidation is unambiguous notice of the

removal of suspension); *AFMC* Op. & J. (both the court's opinion and judgment in the

*AFMC* litigation are silent as to the removal of suspension); *cf. Fujitsu*, 283 F.3d at 1383

(finding that "publication of a court decision in a case does not necessarily result in

Customs' receipt of notice that a suspension of liquidation that was in effect during the

case has been removed" and noting, by way of example, that the appellate court's

decision in a related case "does not even mention the suspension of liquidation that was

ordered by the [CIT]").[10]  Because service of the court's judgment in the *AFMC* litigation

---

[10] Consolidated Plaintiffs' attempts to dismiss the relevance of *Fujitsu* are unpersuasive. Consol. Pls.' Reply at 15.  Consolidated Plaintiffs first argue that the *Fujitsu* court opined on whether Commerce's publication of notice of the court's decision removing suspension constituted notice, not service of the court's decision by the court upon Customs.  *Id.*  This is a distinction without a difference because 19 U.S.C. § 1504(d) provides for CBP's receipt of notice of the removal from Commerce or the court. Consolidated Plaintiffs also argue that the *Fujitsu* court's statement that publication of a court ruling does not necessarily constitute notice to Customs is mere *dicta*.  Consol. Pls.' Reply at 15.  *Fujitsu* holds that Commerce's publication of notice of a court decision in the *Federal Register* resulted in Customs' receipt of notice that suspension of liquidation was removed *because* Commerce stated in the notice "that it would be instructing Customs to liquidate the [subject] entries."  283 F.3d at 1382.  The *Fujitsu* court declined, however, to find that a deemed liquidation occurred when Commerce failed to publish the notice within the time provided by 19 U.S.C. § 1516a(e)(2).  *Id. at* 1382–83.  The appellate court reasoned that doing so would equate the notice requirement in section 1504(d) with the publication requirement in section 1516a(e)(2) and such an approach was disfavored because a court decision may not reference the removal of suspension.  *See id.*  While the facts underlying *Fujitsu* are distinct, the appellate court's rationale is consistent with the requirement that notice to Customs must be unambiguous regarding the removal of suspension and, in turn, supports this court's finding that any service of the court's decision in the *AFMC* litigation by the court on Customs would not constitute unambiguous notice because it does not reference the removal of suspension.  *See AFMC* Op. & J.

by the CIT on CBP cannot, as a matter of law, fulfill the statutory notice requirements,

ascertaining such immaterial facts would be futile and, thus, discovery is not merited.

Consolidated Plaintiffs' remaining arguments in this regard are also

unpersuasive.  Consolidated Plaintiffs suggest that an unfavorable ruling threatens to

nullify the portion of the statute providing for notice from some "other agency" besides

Commerce or a "court with jurisdiction over the entry."  Consol. Pls.' Cross-Mot. & Opp'n

at 19 (referring to CBP's and Commerce's "relentless[] attempt[s] to make such notice

come exclusively in the form of liquidation instructions"); *see also* 19 U.S.C. § 1504(d).

The court's ruling does no such thing.  It simply holds, consistent with the statute and its

interpretation by the Federal Circuit, that service of the CIT's judgment alone would not

have constituted valid notice of the removal of suspension of liquidation and, thus,

discovery on this matter is unnecessary.  This conclusion does not preclude the court or

another agency from issuing valid notice to CBP in another case presenting different

facts.

Consolidated Plaintiffs express concern that if the court determines that valid

notice was not provided until the liquidation instructions, such an interpretation of the

"public and unambiguous notice" requirement might enable "the Government . . .  to

extend liquidation indefinitely."  Consol. Pls.' Cross-Mot. & Opp'n at 19.  Consolidated

Plaintiffs' concern is speculative.  There is no indication that Commerce routinely

delays—or, in the instant case, in which no *Federal Register* notice of the court decision

was necessary, delayed—issuing liquidation instructions.[11]  In the event the date of

Customs' publication of any liquidation instructions differs from the date of non-public

transmission from Commerce to CBP (and there is no earlier date on which notice was

transmitted), the court would need to identify the operative date of notice.  This case

does not, however, require the court to resolve that issue.  *See* JSMF ¶¶ 17–18

(referencing Commerce's upload of the internal message to ACE on May 30, 2017 and

CBP's activation of the message that same day); Dauble Decl., Ex. B (indicating that

Message No. 7150306 was publicly available upon activation).

Consolidated Plaintiffs' reliance on *International Trading Co. v. United States*,

281 F.3d 1268, 1273, 1276 (Fed. Cir. 2002), and *Fujitsu*, 283 F.3d at 1378, as

disfavoring notice in the form of liquidation instructions, is misplaced.  Consol. Pls.'

Cross-Mot. & Opp'n at 19–20.  While in each case the Federal Circuit rejected the date

on which Commerce sent liquidation instructions to CBP as the operative date of notice,

the court did so because, on an earlier date, Commerce had published in the *Federal*

*Register* the final results or amended final results of an administrative review pursuant

to court review that provided notice to CBP that the suspension of liquidation had been

lifted.  *See Fujitsu*, 283 F.3d at 1369, 1380; *Int'l Trading*, 281 F.3d at 1275–76.  Here,

---

[11] Indeed, several litigants have challenged Commerce's policy, now rescinded, of
issuing liquidation instructions 15 days from publication of a final determination in
certain antidumping and countervailing duty proceedings as too soon.  *See, e.g.*, *YC*
*Rubber Co. (N. Am.) LLC v. United States*, 43 CIT ___, ___, 415 F. Supp. 3d 1240,
1246–48 (2019); *Notice of Discontinuation of Policy To Issue Liquidation Instructions*
*After 15 Days in Applicable Antidumping and Countervailing Duty Proceedings*, 86 Fed.
Reg. 3,995 (Dep't Commerce Jan. 15, 2021).

there is no *Federal Register* or other earlier notice implicated in the court's resolution of the case.

Lastly, Consolidated Plaintiffs argue that "Customs should be deemed to receive the notice in cases such as this consolidated action, where the trial court's decision is in harmony with [Commerce's determination]."  Consol. Pls.' Cross-Mot. & Opp'n at 21 (emphasis omitted).  Consolidated Plaintiffs appear to argue that because "Customs is *deemed* to receive . . . notice when it is done through the *Federal Register*" rather than "*direct* notice," *id.* at 20 (first emphasis added), Customs should be deemed to receive notice of the lifting of suspension "through the publication or service of [the] court's decision" in the *AFMC* litigation, *id.* at 21.  Consolidated Plaintiffs' argument is unpersuasive.

As previously noted, publication or receipt of "a court decision in a case does not necessarily result in Customs' receipt of notice that a suspension of liquidation that was in effect during the case has been removed."  *Fujitsu*, 283 F.3d at 1383.  Moreover, "[t]he end of the suspension period . . . is a prerequisite for valid notice under section 1504(d)."  *Cemex*, 384 F.3d at 1320–21.  While CBP published the court's decision in the *AFMC* litigation on March 29, 2017, JSMF ¶ 7, the court-ordered suspension of liquidation did not end until the court decision became final on May 12, 2017, *id.* ¶ 8; *see also* 19 U.S.C. § 1516a(c)(2),(e) (providing for an injunction on liquidation pending

the possibility of a "final court decision" adverse to the original Commerce

determination").[12]

  For these reasons, Consolidated Plaintiffs' request for discovery concerning any

service of the court's judgment in the *AFMC* litigation by the court on CBP is denied.

  Consolidated Plaintiffs' request for discovery concerning the OTO3

communication system likewise lacks merit.  Consolidated Plaintiffs concede that the

OTO3 system "was not in place" during any events material to this action.  Consol. Pls.'

Cross-Mot. & Opp'n at 22.  Consolidated Plaintiffs also fail to identify the cases cited by

the Government that purportedly predate ACE or explain how the transition from OTO3

to ACE undermines the courts' rulings in those cases.  *See id.*; Consol. Pls.' Reply at 16

(stating, without further elaboration, that differences in the ACE and OTO3 systems

render the need for discovery "even more apparent").  Simply put, Consolidated

Plaintiffs fail to explain why it makes any difference, let alone "an important difference,"

whether Commerce lacked direct login capability "prior to ACE."  Consol. Pls.' Cross-

---

[12] Consolidated Plaintiffs rely on language in section 1516a(e) providing for liquidation in accordance with a final court decision when "the cause of action is sustained in whole or in part" to suggest that the notice requirements should be interpreted differently when the cause of action is dismissed.  Consol. Pls.' Cross-Mot. & Opp'n at 21.  Subsection (e) does not support Consolidated Plaintiffs' argument.  That statutory provision simply provides for liquidation in accordance with the court's decision—and not Commerce's original determination—when all or part of any challenge to that determination is meritorious.  *See* 19 U.S.C. § 1516a(e).  When an interested party's challenge wholly fails, liquidation would proceed in accordance with Commerce's determination.  *See id.* Section 1516a(e) has no bearing on what constitutes adequate notice pursuant to section 1504(d).

Mot. & Opp'n at 22.  Thus, Consolidated Plaintiffs' request for discovery in this regard

will be denied.[13]

### c.  Summary

The foregoing discussion demonstrates that there is no genuine dispute that CBP

received notice of the lifting of suspension of liquidation on May 30, 2017, when

Commerce uploaded an internal message in ACE on May 30, 2017; Commerce's notice

was unambiguous; and CBP made the notice publicly available.  Consolidated Plaintiffs'

request to defer any ruling on the Government's motion for summary judgment pending

further discovery will be denied.  The court turns now to Consolidated Plaintiffs'

alternative cross-motion for summary judgment.

---

[13] Consolidated Plaintiffs assert, without elaboration, that the notice contained in messages that Commerce uploads to ACE is non-public and "*not* unambiguous." Consol. Pls.' Cross-Mot. & Opp'n at 26.  While Commerce's message was internal to ACE, Consolidated Plaintiffs do not dispute that Message No. 7150306 is publicly available.  JSMF ¶ 17; Dauble Decl., Ex. B.  In their reply brief, Consolidated Plaintiffs argue that messages—such as Message No. 7150306—cannot "be considered the unambiguous notice required under section 1504(d)" because "a deeper inquiry is required," likely through litigation, "to ascertain when Customs received such messages."  Consol. Pls.' Reply at 16 (emphasis omitted); *see also id.* at 19 (asserting that the absence of any statement concerning Customs' date of receipt in the liquidation instructions renders the instructions an ambiguous form of notice).  Consolidated Plaintiffs erroneously conflate the separate requirements of public and unambiguous notice.  Consolidated Plaintiffs also offer no authority for the notion that notice cannot be unambiguous for purposes of section 1504(d) when the contents of the notice do not publicly disclose the date on which Customs received such notice.

>   **2.  Consolidated Plaintiffs' Cross-Motion for Summary Judgment in the Alternative as to AFI's Nine Subject Entries and IMSS's Subject Entry**

>   **a.  Parties' Contentions**

Consolidated Plaintiffs contend they are entitled to summary judgment with respect to AFI's nine subject entries and IMSS's subject entry because those entries liquidated by operation of law on November 12, 2017.  Consol. Pls.' Cross-Mot. & Opp'n at 22–26; Consol. Pls.' Reply at 17–20.  Consolidated Plaintiffs base this argument on the inclusion of an effective date of May 12, 2017 in Message No. 7150306 and contend that the six-month liquidation period thus began to run on that date.  Consol. Pls.' Cross-Mot. & Opp'n at 26; Consol. Pls.' Reply at 19.  Consolidated Plaintiffs further contend they are entitled to summary judgment with respect to IMSS's subject entry because Customs failed to provide notice of the deemed liquidation prior to reliquidation.  Consol. Pls.' Cross-Mot. & Opp'n at 26–28.

The Government contends that there is "no support for the notion" that the date of notice is retroactive to May 12, 2017.  Gov't's Opp'n & Reply at 7.  Accepting that position, the Government contends, would eliminate the requirement that CBP receive notice of the removal of suspension, which is, by law, separate from the act of removal. *Id.* [14]  The Government further contends that Customs' failure to provide notice of the deemed liquidation to IMSS prior to reliquidation does not invalidate the reliquidation

---

[14] The Government asserts that Consolidated Plaintiffs impermissibly raised an untimely challenge to CBP's implementation of Commerce's liquidation instructions.  Gov't's Opp'n & Reply at 7 n.1.  Consolidated Plaintiffs subsequently clarified they are not challenging the implementation.  Consol. Pls.' Reply at 18–19.

both because IMSS failed to assert the claim in its complaint and because the amended version of 19 U.S.C. § 1501 does not require such notice.  *Id.* at 14.

Consolidated Plaintiffs counter that their claim concerning Customs' failure to provide notice of the deemed liquidation prior to reliquidation "is not independent from [IMSS's] untimely liquidation argument" because notice of the deemed liquidation triggers the 90-day reliquidation period.  Consol. Pls.' Reply at 20.  Thus, Consolidated Plaintiffs contend, the argument is properly before the court.  *Id.*

### b.  The Inclusion of an "Effective Date" in Message No. 7150306 Does Not Change the Liquidation Period

The crux of Consolidated Plaintiffs' argument is that the inclusion of an effective date of May 12, 2017 in Message No. 7150306 means that the six-month liquidation period began on that date.  Consol. Pls.' Cross-Mot. & Opp'n at 26; Consol. Pls.' Reply at 19.  The statute is clear, however, that the liquidation period begins on the date CBP "receiv[es] *notice* of the removal" of the suspension of liquidation, not on the date on which suspension was lifted, to the extent those dates differ.  19 U.S.C. § 1504(d) (emphasis added); *see also Int'l Trading*, 281 F.3d at 1275 ("Even if suspension has been removed, section 1504(d) provides that the six-month period for deemed liquidation does not begin to run until CBP receives notice from Commerce that the

suspension has been removed."). [15]  Consolidated Plaintiffs fail to reconcile their

position with the clear statutory language or the Federal Circuit's interpretation of that

language.

Instead, Consolidated Plaintiffs base their arguments on generalized discussion

about the concept of "informed compliance" Congress implemented through passage of

the Customs Modernization Act ("Mod Act") in 1993[16] and Customs' purported failure to

apply that concept "in the context of the removal of suspension of liquidation."  Consol.

Pls.' Cross-Mot. & Opp'n at 24.  Consolidated Plaintiffs seek to demonstrate Customs'

inconsistent adherence to the principle of informed compliance through the submission

of declarations prepared by Customs' personnel in 2007 for purposes of an unrelated

litigation.  *See id.* at 24–25. [17]  Consolidated Plaintiffs rely on the declarations to argue

---

[15] The *International Trading* court further observed that
    section 1504(d) applies not only to the removal of suspension that occurs
    upon publication of the final results of an administrative review, but also to
    . . . the removal of a court-ordered suspension of liquidation.  In that
    setting, the removal of suspension occurs as the result of court action, not
    a *Federal Register* publication, *and the required notice must be provided*
    *by a separate mechanism.*  For that reason, *it makes sense for section*
    *1504(d) to refer separately to the acts of removal of suspension of*
    *liquidation and notification of the removal*.
281 F.3d at 1276 (emphasis added).
[16] The Mod Act was enacted as Title VI to the North American Free Trade Agreement
Implementation Act, Pub. L. No. 103-182, 107 Stat. 2057 (1993).  "Informed
compliance" represents the idea "that importers have a right to be informed about
customs rules and regulations, as well as interpretive rulings, and to expect certainty
that [CBP] will not unilaterally change the rules without providing importers proper notice
and an opportunity for comment."  S. Rep. No. 103–189 at 64 (1993).
[17] Consolidated Plaintiffs submitted declarations prepared by Dirik J. Lolkus and David
Genovese on November 16 and 26, 2007, respectively, and filed in *Travelers Indemnity*
*Co. v. United States*, Court No. 06-cv-00151 (CIT).  *See* Consol. Pls.' Cross-Mot. &
Opp'n, Ex. 4 ("Lolkus Decl."), Ex. 5 ("Genovese Decl.").

that, when a message states the date on which suspension of liquidation lifted, Customs

equates the date of removal with the date of notice of removal.  *See id.* at 24–26.

Consolidated Plaintiffs fail, however, to explain why the court should treat these

unrelated declarations as "Customs' own interpretation" of Message No. 7150306 or

why the statements contained in the declarations should be considered "controlling."

*See id.* at 26.  Consolidated Plaintiffs aver that the court in *Travelers Indemnity Co. v.*

*United States*, 32 CIT 1057, 580 F. Supp. 2d 1330 (2008), gave effect to the statements

in the declarations in reaching its decision and the Government is acting inconsistently

in requesting the court to disregard the declarations.  *See* Consol. Pls.' Reply at 17–18.

Consolidated Plaintiffs' arguments are not persuasive.

*Travelers* addressed whether "publication of a case in the *Customs Bulletin*

*Weekly* ('the *Bulletin*')" constituted "sufficient notice to [Customs]" pursuant to 19 U.S.C.

§ 1504(d).  32 CIT at 1057, 580 F. Supp. 2d at 1331–32.  The *Travelers* court relied on

portions of the Lolkus and Genovese Declarations, among others, to conclude that

publication in the *Bulletin* did not constitute notice to CBP because CBP "employees

who are concerned with liquidation neither necessarily regularly read nor rely upon, the

contents of that publication."  *Id.* at 1064, 580 F. Supp. 2d at 1337; *see also id.* at 1064–

68, 580 F. Supp. 2d at 1337–40 (discussing four CBP declarations).  The declarations

constituted—and were treated as—"factual information" material to the narrow question

before the court.  *Id.* at 1064, 580 F. Supp. 2d at 1337.  The court did not view the

declarations as legal authority regarding notice pursuant to section 1504(d) generally or

use them to make a finding regarding the date on which notice was provided in that

case.  Moreover, the portions of the declarations that Consolidated Plaintiffs quote in

their brief appear nowhere in the court's opinion.  *Compare* Consol. Pls.' Cross-Mot. &

Opp'n at 24–25 (quoting Lolkus Decl. ¶ 7,[18] Genovese Decl. ¶ 14), *with Travelers*, 32

CIT at 1065–67, 580 F. Supp. 2d at 1337–39.[19]

Consolidated Plaintiffs also rely on what they perceive as an inconsistency

between Message No. 6123302 and Message No. 7150306.  Consol. Pls.' Cross-Mot. &

Opp'n at 25.  Consolidated Plaintiffs argue that, although the effective date set forth in

Message No. 6123302 "is the operative date," the same cannot be said with respect to

Message No. 7150306.  *Id.*  Consolidated Plaintiffs argue further that this inconsistency

appears to undermine the effectiveness of the court order that resulted in the lifting of

suspension of liquidation.  *See id.*  Consolidated Plaintiffs misapprehend the way the

different messages function and their concerns are misplaced.

Customs activated Message No. 6123302 on May 2, 2016.  JSF ¶ 1.  Message

No. 6123302 informed Customs personnel that the court had entered a statutory

injunction covering entries subject to the *AFMC* litigation on April 27, 2016 and that the

injunction was effective as of that date.  *Id.* ¶¶ 2, 5.  In other words, Customs was

enjoined from liquidating subject entries that remained unliquidated as of April 27, 2016.

---

[18] Consolidated Plaintiffs emphasize, *inter alia*, Mr. Lolkus's statement that "[a]n
instruction posted on the OTO3 bulletin board will now either tell us the date on which
suspension of liquidation was removed (that is, the date on which Customs received
notice), or the deadline by which liquidation must be accomplished."  Consol. Pls.'
Cross-Mot. & Opp'n at 24 (quoting Lolkus Decl. ¶ 7) (emphasis omitted).
[19] While the *Travelers* court cites to paragraph 7 of the Lolkus Declaration, it does not
reproduce language from that paragraph or otherwise discuss it.

*See* 19 U.S.C. § 1516a(c)(2).  Message No. 7150306 had an effective date of May 12,

2017.  JSMF ¶ 21.  The suspension of liquidation thus, in fact, ended on that date.

The question before the court is not, however, on what date suspension was

removed, but on what date Customs received notice of the removal for purposes of

starting the six-month liquidation period.  That the removal of suspension and notice of

that removal occurred on different dates does not mean, as Consolidated Plaintiffs

suggest, that the judgment in the *AFMC* litigation did not "produc[e] binding effects."

Consol. Pls.' Cross-Mot. & Opp'n at 25.  It simply means that the time in which Customs

had to liquidate a subject entry before it liquidated by operation of law did not begin until

Customs received adequate notice that it could, in fact, liquidate the entry.[20]

Accordingly, Consolidated Plaintiffs are not entitled to summary judgment with

respect to AFI's nine subject entries or IMSS's subject entry under a theory that the

entries liquidated by operation of law on November 12, 2017.  However, resolving

Consolidated Plaintiffs' motion as to IMSS's subject entry, i.e., whether CBP was

required to convey notice of the deemed liquidation before reliquidating the entry,

---

[20] Consolidated Plaintiffs also suggest that "Commerce's and Customs' practice . . .
invalidates the congressional intent behind section 1504(d)."  Consol. Pls.' Cross-Mot. &
Opp'n at 25.  Consolidated Plaintiffs assert that "the main principle" underlying section
1504(d) is to preclude CBP or Commerce from "extend[ing] liquidation indefinitely."  *Id.*
at 19; *see also id.* at 18–19 (discussing amendments to section 1504(d) and associated
legislative history).  Assuming Consolidated Plaintiffs' characterization of the purpose
behind section 1504(d) is true, Consolidated Plaintiffs have not explained how that
intent was undermined with respect to AFI's nine subject entries.  Section 1504(d)
afforded Customs until November 30, 2017 to liquidate the entries, and Customs timely
liquidated the entries on November 24, 2017.  JSMF ¶ 26.  Thus, Consolidated
Plaintiffs' concerns are without merit.

depends on the version of section 1501 that applies to Customs' reliquidation of IMSS's subject entry.  The court now turns to that issue.

### c.  The Amended Version of Section 1501 Applies to the Reliquidation of IMSS's Subject Entry

The Supreme Court of the United States has recognized that "the presumption against retroactive legislation is deeply rooted in our jurisprudence," because "individuals should have an opportunity to know what the law is and to conform their conduct accordingly."  *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). However, a statute is not impermissibly retroactive "merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law.  Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment."  *Id.* at 269–70 (citations omitted); *see also Parkdale Int'l v. United States*, 475 F.3d 1375, 1378 (Fed. Cir. 2007) (quoting same).  To that end, the court generally considers three *Landgraf* factors: "the 'nature and extent of the change of the law,' 'the degree of connection between the operation of the new rule and a relevant past event,' and 'considerations of fair notice, reasonable reliance, and settled expectations.'"  *Parkdale*, 475 F.3d at 1378–79 (quoting *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1364 (Fed. Cir. 2005)); *see also Landgraf*, 511 U.S. at 270.[21]  The Federal Circuit has construed the second

---

[21] This analysis is required when, as here, the statute does not expressly state its temporal applicability and application of the rules of statutory construction likewise do not indicate its temporal reach.  *See United States v. Great Am. Ins. Co. of NY*, 41 CIT ___, ___, 229 F. Supp. 3d 1306, 1324 (2017).

*Landgraf* factor as requiring inquiry into "the event that triggers application of [the relevant statutory provision]" and the timing of that event in relation to the amendment. *Travenol Lab'ys, Inc. v. United States*, 118 F.3d 749, 752 (Fed. Cir. 1997) (explaining that "prior [case] law . . . has focused on the interrelationship between the new law and past conduct" and, thus, the court "must evaluate the importing process in an effort to find the event that triggers the application of [19 U.S.C. § 1505(c)]"). In *United States Tsubaki, Inc. v. United States*, 512 F.3d 1332, 1334–35 (Fed. Cir. 2008), the Federal Circuit dispensed entirely with the first and third *Landgraf* factors and focused solely on identifying the date on which the event that triggered application of 19 U.S.C. § 1504(d) occurred. Thus, if the conduct that triggers application of a statute follows an amendment to that statute, such that the provision does not confer new legal consequences to pre-amendment conduct, application of the amended statute to the conduct is not (or very likely not) impermissibly retroactive. Accordingly, the court first identifies the event that triggers application of 19 U.S.C. § 1501.

"While importers entering merchandise subject to an antidumping duty order are required to make a cash deposit of estimated antidumping duties, this rate is not final where an administrative review is initiated." *Parkdale*, 475 F.3d at 1379. "This stems from the fact that 'the United States uses a "retrospective" assessment system under which final liability for antidumping and countervailing duties is determined after merchandise is imported.'" *Id.* (quoting 19 CFR § 351.212(a)). Thus, "in cases involving importers' challenges to the application of new laws based on retroactivity," liquidation often—but not always—constitutes "the paramount relevant 'past event.'" *Id.*

(citations omitted); *see also Travenol*, 118 F.3d at 753 (holding that the date of liquidation or reliquidation determines what version of 19 U.S.C. § 1505(c) applies because the provision, which governs the assessment of interest owing from the underpayment or overpayment of duties, is only implicated upon liquidation (or reliquidation)); *cf. Tsubaki*, 512 F.3d at 1335 (holding that "notice to Customs of the act of lifting the suspension of liquidation is the correct trigger for the application of 19 U.S.C. § 1504(d)").

Consolidated Plaintiffs attempt to distinguish *Tsubaki* by arguing that that section 1501 lacks "any express language suggesting such a triggering event."  Consol. Pls.' Reply at 10.  Consolidated Plaintiffs also argue, in a conclusory manner, that "the triggering event cannot be the same as the subject matter of the statute" at issue, "i.e., liquidation and/or reliquidation."  *Id.*

Consolidated Plaintiffs are incorrect.  Section 1501, like section 1504(d), explicitly states the predicate event that begins the time period within which CBP may or must act.  In *Tsubaki*, Customs' receipt of notice of the removal of suspension "impose[d] the burden of prompt liquidation on the government" and thereby triggered the application of the six-month liquidation period set forth in 19 U.S.C. § 1504(d).  512 F.3d at 1335. Thus, the court identified when Customs received notice to determine the applicable version of section 1504(d).  *See id.* at 1337.  Section 1501 provides that an original liquidation of an entry, whether deemed or manual, triggers Customs' authority to reliquidate that entry within 90 days.  19 U.S.C. § 1501.  Thus, the applicable version of section 1501 depends on when IMSS's subject entry liquidated by operation of law.

IMSS's subject entry liquidated by operation of law on November 30, 2017; on that date, Customs' authority to reliquidate the entry pursuant to 19 U.S.C. § 1501 arose. Because application of the amended version of section 1501 did not assign new legal consequences to pre-amendment conduct, the amended version of the statute applies to the court's examination of the validity of Customs' actions with respect to the liquidation or reliquidation of IMSS's subject entry.

Consolidated Plaintiffs' reliance on *Great American* to reach a contrary conclusion is misplaced. Consol. Pls.' Cross-Mot. & Opp'n at 14–15; Consol. Pls.' Reply at 12–14. There, the court held that the amended version of section 1501 did not apply to an entry made in made in 2006 when: the entry liquidated by operation of law in February 2009; Customs posted a notice of the deemed liquidation in December 2009; and, in January 2010, Customs reliquidated the entry. *Great Am.*, 229 F. Supp. 3d at 1311–16, 1323–26. In reaching its decision, the court considered that all relevant CBP conduct *preceded* the statutory amendment and concluded that it would be unfair to CBP to measure the lawfulness of its conduct against a law that was not in effect when the conduct occurred. *See id.* at 1325. The court's decision was thus tailored to "the facts of [that] case," *id.* at 1325–26, which are distinct from the instant facts.

Consolidated Plaintiffs further attempt to align this case with *Great American* by arguing that "there is a strong 'degree of connection between operation of the new rule and a relevant past event'" because "applying the 2016 version of section 1501 to the (alleged) reliquidation at issue here, which occurred without notice, but within 90 days of the deemed liquidation, would validate a reliquidation made *without observance of a*

*legal requirement*—providing notice—and subject [AFI] to increased duties." Consol. Pls.' Reply at 13 (citing *Great Am.*, 229 F. Supp. 3d at 1325) (emphasis added). Consolidated Plaintiffs' argument assumes the answer to the question before the court, namely, that there was a legal requirement to provide notice of the deemed liquidation before reliquidation. Whether that is true, however, turns on what version of section 1501 applies. More importantly, what counts as a "relevant past event" depends on whether the event occurred prior to enactment of the new statutory provision. *See Landgraf*, 511 U.S. at 269–70 (characterizing the inquiry into "the nature and extent of the change in the law and the degree of connection between the operation of the new rule and *a relevant past event*" as "whether the new provision attaches new legal consequences to *events completed before its enactment*") (emphasis added); *Travenol*, 118 F.3d at 754 (holding that "application of amended section 1505(c) to goods entered before, but liquidated (or reliquidated) after, its effective date . . . does not constitute a retroactive application of that provision"). As discussed above, *Great American* is distinct because there, both the original liquidation and the reliquidation occurred several years before Congress amended section 1501. 229 F. Supp. 3d at 1325.

To the extent the first and third *Landgraf* factors are implicated, they do not change the outcome in this case. "[T]he 'nature and extent of the change of the law' is significant because the amendment changes the starting point for computing the time that CBP has to voluntarily reliquidate an entry from the date of notice to the date of the liquidation." *Great Am.*, 229 F. Supp. 3d at 1325. Thus, this factor would disfavor retroactivity.

With respect to "familiar considerations of fair notice, reasonable reliance, and settled expectations," *Landgraf*, 511 U.S. at 270, Consolidated Plaintiffs argue that it would be unfair and unreasonable to expect importers to stay informed about statutory changes occurring after the time of entry and potentially affecting their entries, Consol. Pls.' Reply at 13–14.  Consolidated Plaintiffs offer no persuasive argument or evidence, however, that they reasonably relied on, or had any settled expectations concerning, the notice requirement embedded in the pre-amendment version of section 1501 or lacked notice of the statutory amendment.  *Cf. Princess Cruises*, 397 F.3d at 1366 (holding that a Customs ruling did not apply to pre-ruling conduct when it would have imposed "an evidentiary presumption that [could not] possibly be met" and the plaintiff had relied on a letter received from a Customs official indicating that the plaintiff would not be subject to the liability imposed by the new ruling); *Great Am.*, 229 F. Supp. 2d at 1325 (finding that application of the 2016 amendment to Customs' pre-amendment conduct would "implicate[] fairness and reliance considerations" because, at the time of the reliquidation, "[section] 1501 plainly afforded Customs 90 days from the date on which it posted the bulletin notice to reliquidate the subject entry").

In sum, the amended version of section 1501 applies to IMSS's subject entry.  Thus, CBP was not required to give notice of the deemed liquidation prior to reliquidating IMSS's subject entry.  Accordingly, Consolidated Plaintiffs are not entitled

to summary judgment as to this entry based on the lack of notice of the deemed liquidation prior to reliquidation.[22]

### 3.  The Government is Entitled to Summary Judgment Regarding AFI's Nine Subject Entries and IMSS's Subject Entry

In addition to establishing May 30, 2017, as the date that started the six-month liquidation period, *see supra* p. 21, the undisputed facts demonstrate that Customs timely liquidated AFI's nine subject entries on November 24, 2017, JSMF ¶ 26, and, thus, those entries did not liquidate by operation of law, 19 U.S.C. § 1504(d). Accordingly, the court will enter summary judgment for the Government with respect to AFI's nine subject entries and deny Consolidated Plaintiffs' alternative cross-motion.

The court further finds it undisputed that IMSS's subject entry liquidated by operation of law, JSMF ¶ 22, and that the deemed liquidation occurred on November 30, 2017 (six months from May 30, 2017).  Because CBP's reliquidation on February 28, 2018 coincided with precisely the 90th day thereafter, *see* JSMF ¶ 23, and CBP was not required to give notice of the deemed liquidation prior to reliquidation, the reliquidation was valid and timely pursuant to section 1501, as amended.  Accordingly, the court will enter summary judgment for the Government with respect to IMSS's subject entry and deny Consolidated Plaintiffs' alternative cross-motion.  Additionally,

---

[22] Because the court finds that CBP was not required to give notice of the deemed liquidation before reliquidating IMSS's subject entry, the court need not address the Government's contention that IMSS's argument concerning CBP's failure to provide notice amounts to an impermissible attempt to assert a new claim.  Gov't's Opp'n & Reply at 13–14.

the court will deny as moot the Government's motion for a protective order as to IMSS and IMSS's motion to compel.

### B. The Parties' Cross-Motions for Summary Judgment as to AFI's Tenth Subject Entry

#### 1. Parties' Contentions

The Parties do not dispute that AFI's tenth subject entry liquidated by operation of law or that Customs did not provide notice of the deemed liquidation. Consol. Pls.' SMF ¶¶ 1, 3; Gov't's Resp. to Consol. Pls.' SMF ¶¶ 1, 3. Rather, the Parties dispute whether Customs' assessment of duties on December 1, 2017 constituted an untimely liquidation or a valid reliquidation pursuant to 19 U.S.C. § 1501. *Compare* Gov't's Mot. Summ. J. at 12–13, *and* Gov't's Opp'n & Reply at 8, 13, *with* Consol. Pls.' Cross-Mot. & Opp'n at 8–10, *and* Consol. Pls.' Reply at 4–9. The Parties also dispute what version of section 1501 applies to AFI's tenth subject entry. *Compare* Gov't's Mot. Summ. J. at 14–18, *and* Gov't's Opp'n & Reply at 9–12, *with* Consol. Pls.' Cross-Mot. & Opp'n at 14–15, *and* Consol. Pls.' Reply at 9–14.

The Government seeks summary judgment on the basis that CBP timely reliquidated AFI's tenth subject entry on December 1, 2017 and, pursuant to the amended version of section 1501, was not required to provide notice of entry's liquidation by operation of law prior to reliquidation. Gov't's Mot. Summ. J. at 12–13, 18; Gov't's Opp'n & Reply at 11–13. Consolidated Plaintiffs seek summary judgment on the basis that Customs could not have performed a voluntary reliquidation pursuant to section 1501 absent "knowledge and awareness of the error sought to be corrected."

Consol. Pls.' Cross-Mot. & Opp'n at 11.  Accepting the Government's position, Consolidated Plaintiffs contend, would reward Customs "with an automatic 90-day 'grace period' in which to liquidate entries."  *Id.* at 12.

The court requested supplemental briefing as to whether "the principle of harmless error recognized by the . . . Federal Circuit in *Intercargo Ins. Co. v. United States*, 83 F.3d 391 (Fed. Cir. 1996), and its progeny, appl[ies] to the court's consideration of AFI's claim."  Ltr. Order.  Additionally, the court instructed AFI to explain "what, if any, cognizable harm" AFI suffered "as a result CBP's assessment of antidumping duties pursuant to an alleged 'liquidation' of the entry within the time otherwise permitted by 19 U.S.C. § 1501, as amended, to 'reliquidate' the entry inclusive of antidumping duties?"  *Id.*[23]

In their supplemental filings, the Parties agreed that 19 U.S.C. § 1504(d) is not amenable to a harmless error analysis because the statute states a clear consequence for noncompliance—deemed liquidation.  AFI's Suppl. Br. at 3–6; Gov't's Suppl. Br. at 2.  However, the Parties were unclear concerning their respective positions on whether 19 U.S.C. § 1501—the operative statute for purposes of resolving AFI's claim—is amenable to a harmless error analysis.  Notwithstanding that lack of clarity, AFI did argue that validating CBP's action would cause harm in the form of expanding the reach of section 1501 to encompass "automatic reliquidation by operation of law" and, thus,

---

[23] For purposes of supplemental briefing, the court instructed Parties to assume that the amended version of section 1501 applied, "such that CBP was not required to give notice of the original liquidation by operation of law prior to reliquidation."  Ltr. Order.

permit CBP to extend the time for liquidation under 19 U.S.C. § 1504(d) by an additional 90 days.  AFI's Suppl. Br. at 7–8.  The Government countered that that AFI has failed to demonstrate any "legally cognizable injury" with respect to CBP's "liquidation" within the 90-day timeframe for reliquidation accorded by section 1501.  Gov't Suppl. Br. at 3–4 (noting that "AFI has not identified anything it would have done differently had CBP 'reliquidated' . . .  the entry" and AFI has not "identified any deprivation of rights or actual prejudice it suffered").

In order to clarify the Parties' positions, the court heard oral argument on this issue.   At the hearing, AFI sought to limit the applicability of a harmless error analysis to regulatory errors and argued that upholding CBP's action would "obviate" the six-month deadline for liquidation contained in section 1504(d).  Oral Arg., 5:10–26:15 (approximate time stamp from recording).[24]  The Government argued that a harmless error analysis is not limited to regulations; CBP's "liquidation" was the "functional equivalent" of a "reliquidation"; and any error was harmless because AFI "clearly had notice" of CBP's assessment of antidumping duties and protested the assessment.  *Id.*, 26:21–29:12.

---

[24] AFI relied on *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 318 (1988), for the proposition that a harmless error analysis is improper with respect to statutory violations.  Oral Arg., 24:33–26:23.  *Torres* is inapposite for that purpose.  487 U.S. at 317–18 (finding the specificity requirement of Federal Rule of Appellate Procedure 3(c) to be "jurisdictional" and non-waivable for "good cause").  Moreover, *Intercargo* contemplates the application of a harmless error analysis to statutes.  83 F.3d at 396 (noting that, "[p]rejudice, as used in this setting, means injury to an interest that the *statute, regulation, or rule* in question was designed to protect") (emphasis added).

### 2.  The Government is Entitled to Summary Judgment as to AFI's Tenth Subject Entry

As previously noted, the Parties do not dispute that AFI's tenth subject entry liquidated by operation of law.  Thus, resolution of the cross-motions addressed to AFI's tenth subject entry turns on whether Customs ran afoul of the requirements of section 1501 when it assessed antidumping duties on the entry on December 1, 2017.  To that end, as noted, the Parties also dispute what version of section 1501 applies to the court's examination of Customs' action.

The court dispenses with the latter issue first.  The prior analysis concerning what version of section 1501 applies to Customs' reliquidation of IMSS's subject entry pertains equally to Customs' reliquidation of AFI's tenth subject entry.  Customs' authority to reliquidate AFI's tenth subject entry pursuant to 19 U.S.C. § 1501 arose when the entry liquidated by operation of law on November 30, 2017.  Consol. Pls.' SMF ¶ 1; Gov't's Resp. to Consol. Pls.' SMF ¶ 1; *see also* Consol. Pls.' Cross-Mot. & Opp'n at 14 (stating that "the only justifiable inference that the [c]ourt can make with respect to the liquidation status of [AFI's tenth subject entry] is that, on November 30, 2017, such entry deemed liquidated, pursuant to 19 U.S.C. § 1504(d)").  Thus, the amended version of section 1501 did not assign new legal consequences to pre-amendment conduct and is the operative version.  Accordingly, section 1501 did not require Customs to give notice of the deemed liquidation to AFI before reliquidating the entry and Consolidated Plaintiffs are not entitled to summary judgment based on the lack of notice.

As to whether the December 1, 2017 event constituted a liquidation or a valid

reliquidation, the Government does not dispute the factual record wherein CBP marked

the event as a "liquidation."  JSMF ¶ 27.  The Government nevertheless argues that any

liquidation within the 90-day period following a deemed liquidation is, as a matter of law,

a timely reliquidation pursuant to 19 U.S.C. § 1501.  *See* Gov't Mot. Summ. J. at 13.

Consolidated Plaintiffs counter that use of the term "voluntary" in the title to section

1501 and in Customs' implementing regulation,19 C.F.R. § 173.3,[25] "requires Customs'

knowledge and awareness of the error sought to be corrected" for the reliquidation to be

valid, Consol. Pls.' Cross-Mot. & Opp'n at 11.  Consolidated Plaintiffs seek summary

judgment based on the entry documentation on the record in which CBP marked the

event as a liquidation.  *See id.* at 8–10.[26]

This case does not require the court to address whether section 1501 or

Customs' implementing regulation *require* the relevant Customs official to be aware of

---

[25] The regulation provides, *inter alia*, that Customs
> may reliquidate on [its] own initiative a liquidation or a reliquidation to
> correct errors in appraisement, classification, or any other element
> entering into the liquidation or reliquidation, including errors based on
> misconstruction of applicable law.  A voluntary reliquidation may be made
> even though a protest has been filed, and whether the error is discovered
> by [Customs] or is brought to [its] attention by an interested party.

19 C.F.R. § 173.3.  Subsection (a) of Customs' regulation was amended in 2017 to
provide for reliquidation by the "Center director" rather than the "port director," but
otherwise remains unchanged from the version in effect when the entries were made.
*See Regulatory Implementation of the Ctrs. of Excellence and Expertise*, 81 Fed. Reg.
92,978, 92,999 (CBP Dec. 20, 2016) (interim final rule; eff. Jan. 19, 2017).

[26] Consolidated Plaintiffs also seek to rely on the Government's original Answer.
Consol. Pls.' Cross-Mot. & Opp'n at 9.  However, as Consolidated Plaintiffs
acknowledge, that Answer has since been superseded by the Government's Answer to
AFI's Amended Complaint.  *Id.*; *see also* Ans. to First Am. Compl., ECF No. 72.

the prior liquidation in order to implement a valid voluntary reliquidation.  Assuming,

*arguendo*, that the statute and regulation contain such a requirement, as discussed

more fully below, the court finds that CBP committed a nonactionable error by

liquidating an entry that CBP was, instead, permitted to reliquidate notwithstanding the

deemed liquidation.[27]  In either case, the effect of Customs' action is (or would have

been) the same: the assessment of applicable antidumping duties.  Consolidated

Plaintiffs do not argue otherwise and, thus, have failed to establish any cognizable injury

from Customs' alleged error.

    "It is well settled that principles of harmless error apply to the review of agency

proceedings."  *Intercargo*, 83 F.3d at 394.  Agency action will be "set aside 'only for

substantial procedural or substantive reasons.'"  *Id.* (quoting *Sea–Land Serv., Inc. v.*

*United States*, 14 CIT 253, 257, 735 F. Supp. 1059, 1063 (1990), *aff'd and adopted*, 923

F.2d 838 (Fed. Cir. 1991)).  When "neither the statute nor the regulation specifies the

consequence of noncompliance" with a procedural requirement, the party seeking relief

must demonstrate that it suffered substantial prejudice as a result of the contested

action.  *Cummins Engine Co. v. United States*, 23 CIT 1019, 1032–33, 83 F. Supp. 2d

---

[27] The court does not need to address the extent of the factual record concerning CBP's awareness of the prior deemed liquidation (or lack thereof).  The record merely establishes that Customs labeled the event as a "liquidation" in the entry documentation filed with the court.  JSMF ¶ 27.  AFI bases its motion for summary judgment on the notion that the erroneous label on the entry documentation establishes CBP's lack of awareness; AFI does not seek further discovery on this issue and the Parties have not addressed the extent of any factual dispute concerning the degree of knowledge held by the responsible CBP official.  Nevertheless, as discussed, AFI is not entitled to relief even if the court adopts AFI's interpretation of the statute and all inferences in its favor.

1366, 1378 (1999); *see also PAM S.p.A. v. United States*, 463 F.3d 1345, 1346 (Fed. Cir. 2006) (CIT erred in ordering Commerce to rescind a completed administrative review of the plaintiff based on a lack of service of the domestic parties' request for review of the plaintiff absent a showing of substantial prejudice); *Intercargo*, 83 F.3d at 396 (reversing the CIT's grant of summary judgment for the plaintiff when the court was "unable to discern any prejudice" arising from Customs' defective notice of extension of liquidation).

Here, to the extent section 1501 requires CBP to be aware of an original liquidation pursuant to 19 U.S.C. §§ 1500 or 1504, the statute does not specify any consequence flowing from a reliquidation made without such awareness.  *See* 19 U.S.C. § 1501.  Customs' regulation, 19 C.F.R. § 173.3, likewise does not specify any consequence for the Center Director's lack of awareness of errors in the prior liquidation.[28]  Consolidated Plaintiffs further fail to identify any actionable prejudice stemming from the fact that CBP performed a "liquidation" rather than a "reliquidation."

"A party is not 'prejudiced' by a technical defect simply because that party will lose its case if the defect is disregarded.  Prejudice, as used in this setting, means injury

---

[28] AFI argues that "procedural requirements should be liberally construed only when they are 'mere technicalities,' i.e., when the agency has essentially complied with the rule in a functionally equivalent manner."  AFI's Suppl. Br. at 4 (quoting *Foman v. Davis*, 371 U.S. 178, 181 (1962)).  While the facts underlying the Court's decision in *Foman* are distinct, the stated principle undermines—rather than supports—AFI's position. Here, CBP was within its discretion to assess antidumping duties on AFI's tenth subject entry within 90 days from the original deemed liquidation.  Regardless of the label attached to the action, the outcome pursuant to the alleged liquidation was the functional equivalent of a reliquidation.

to an interest that the statute, regulation, or rule in question was designed to protect."

*Intercargo*, 83 F.3d at 396.  Consolidated Plaintiffs merely assert that accepting the

Government's position would "mean that Customs has six months plus 90 days to

liquidate" an entry, such that "Customs would be rewarded with an automatic 90-day

'grace period' in which to liquidate entries without any negative implications."  Consol.

Pls.' Cross-Mot. & Opp'n at 12; *see also* AFI's Suppl. Br. at 7–8.  That is not a

cognizable injury; rather, that is precisely the amount of time that sections 1501 and

1504(d), together, afford Customs to correctly assess the duties owed on an entry that

first liquidates by operation of law.  Finding that CBP committed harmless error in this

case does not, therefore, obviate the timeframe set forth in section 1504(d).  Absent a

showing of prejudice, Consolidated Plaintiffs are not entitled to avoid the applicable

antidumping duties that CBP was required to assess.  Thus, the court will grant the

Government's motion for summary judgment as to AFI's tenth subject entry and deny

Consolidated Plaintiffs' cross-motion.

CONCLUSION

In accordance with the foregoing, the court will grant the Government's motion

for summary judgment with respect to all subject entries and deny Consolidated

Plaintiffs' cross-motion.  The court will further deny as moot the Government's motion

Consol. Court No. 18-00222                                    Page 43

for a protective order as to IMSS and IMSS's motion to compel.  Judgment will be

entered accordingly.


                                        /s/      Mark A. Barnett____
                                        Mark A. Barnett, Chief Judge

Dated: April 9, 2021_____
        New York, New York